# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| BEN C. ONWUNUMAGHA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-3316 |
| | § | |
| STATION OPERATORS INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND OPINION

Ben C. Onwunumagha sued his former employer, Station Operators, Inc., a subsidiary of ExxonMobil Oil Corporation (ExxonMobil), after he was fired for violating one of the company's "posted offenses." After pursuing administrative remedies, Onwunumagha sued ExxonMobil for discrimination based on race, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and for intentional infliction of emotional distress under Texas law. (Docket Entry No. 1, ¶¶ 12–13, 15, 19). ExxonMobil has filed a motion for summary judgment, (Docket Entry No. 13), to which Onwunumagha has filed a response, (Docket Entry No. 16). After reviewing the pleadings, the records, the motions and response, and the applicable law, this court grants Exxon Mobil's motion for summary judgment and, by separate order, enters final judgment. The reasons are explained below.

**I.    Background**

On August 18, 2003, Onwunumagha began working for ExxonMobil as a manager trainee. (Docket Entry No. 13, Ex. A. at 22). After an introductory period of a few months, Onwunumagha served as a store manager. (*Id.* at 26–27). As part of his job as manager, Onwunumagha's duties

included daily surveying of fuel prices of competing gas stations in the area of his store. (*Id.* at 49–50). The two competing stations Onwunumagha had to monitor were RaceTrac and Shell. (*Id.* at 30). Before taking over as a store manager, Onwunumagha received training on how to conduct the surveys. (*Id.* at 29–30). Additionally, Onwunumagha received information on, and a description of, ExxonMobil's employee rules. (Docket Entry No. 13, Ex. A at 51–52, Ex. 1). ExxonMobil included a list of "posted offenses" and the penalties for each offense. The list was also displayed in each store. (Docket Entry No. 13, Ex. A at 51–53). One of the "posted offenses," with a potential punishment of immediate termination without warning, included "falsifying documents." (*Id.*). Onwunumagha signed a written statement that he had received these rules. (Docket Entry No. 13, Ex. A at 51–52, Ex. 1).

ExxonMobil posted Onwunumagha at a high-volume store in a heavily Hispanic neighborhood. (Docket Entry No. 13, Ex. A at 73). The area included a large Hispanic flea market that attracted many customers to the area every weekend. (*Id.* at 71). When Onwunumagha received this assignment, many of the store's customers did not speak English and he did not speak Spanish. (Docket Entry No. 13, Ex. B at 53–57). Shahid "Moe" Yousaf served as territory manager in the Houston, Texas area, supervising Onwunumagha's store and several others. (Docket Entry No. 13, Ex. A. at 36–37). Yousaf routinely visited the stores in his territory to help the managers with daily operations, provide ideas on increasing sales, give assistance, and help with employee issues. (*Id.* at 37–38, Docket Entry No. 13, Ex. B. at 38). One of the initiatives Yousaf proposed in this capacity included introducing a Hispanic food line to the Houston-area stores. (Docket Entry No. 13, Ex. A. at 72–73; Ex. B at 47–49, 52). Yousaf's job also included monitoring and analyzing the daily fuel reports made by the store managers within his territory. (Docket Entry No. 13, Ex.

B at 111–12). Yousaf monitored the reports by computer. (*Id.*). Yousaf testified that before he visited a store, he routinely checked the most recent daily fuel reports for that store and visited the competing stores to verify the accuracy of the report the manager had submitted. (*Id.* at 108).

On April 14, 2004, Yousaf went to Onwunumagha's store on a periodic, routine visit. (*Id.* at 107–08). Before leaving his house for the store, Yousaf consulted the daily price report Onwunumagha had submitted earlier that morning. (*Id.* at 109). Yousaf wrote down the prices Onwunumagha had reported and left his house. (*Id.*). Before reaching Onwunumagha's store, Yousaf first stopped by RaceTrac and Shell to verify the prices Onwunumagha had reported. (*Id.* at 108–09). Yousaf noticed that RaceTrac's listed fuel price did not match the price on the report Onwunumagha submitted. (*Id.* at 112–13).

Later that evening, Yousaf called another store manager he supervised, Stacey Bruinsma, and asked her to stop by the RaceTrac near Onwunumagha's store and record the price. (*Id.* at 120 & Ex. 4). Bruinsma complied and later phoned Yousaf to report the prices she had recorded. (Docket Entry No. 13, Ex. B at 120). The price Bruinsma reported also differed from the price Onwunumagha had reported that morning. (*Id.*). Yousaf asked Bruinsma to do the same thing the next morning (April 15, 2004) on her way to work. (*Id.*, Ex. 4). She did so and again found prices different from the ones Onwunumagha submitted for that day. (Docket Entry No. 13, Ex. B at 120–21; Exs. 4, 12).

Yousaf asked Bruinsma to check the prices at RaceTrac one more time on her way home from work that evening. Yousaf also personally conducted a survey of RaceTrac's prices that evening. (Docket Entry No. 13, Ex. B at 121, 123; Ex. 4). Once again, the prices submitted by Onwunumagha differed from those found by Bruinsma and Yousaf. (Docket Entry No. 13, Ex. B

at 118; Exs. 4 & 12). Suspicious that Onwunumagha was not reporting valid fuel prices, Yousaf telephoned Timothy Skrien in the human resources department.

Skrien advised Yousaf to obtain written verification from RaceTrac of that station's gas prices for April 14 and 15. (Docket Entry No. 13, Ex. B at 125). Following this advice, Yousaf asked Bruinsma to go by RaceTrac on April 17 and try to obtain written confirmation of the gas prices for the earlier dates. (*Id.*). Yousaf suggested that Bruinsma obtain the information by disguising herself as a parent helping her child with a school report on gas prices. (*Id.* at 125–26). The ruse worked. A RaceTrac employee gave Bruinsma the station's gas prices for April 14 and 15, 2004. (*Id.* at 127). After receiving this information, Yousaf talked to his Operations Manager, Archie Meyer, about the situation. (*Id.* at 129 & Ex. 4). Yousaf also called Skrien to update him on the findings and to recommend that ExxonMobil fire Onwunumagha for his conduct. (*Id.*). Skrien, on behalf of human resources, endorsed Yousaf's recommendation to terminate Onwunumagha's employment. (*Id.*).

On April 21, 2004, Yousaf told Onwunumagha that his employment was terminated effective April 24, 2004, for falsification of fuel prices on April 14 and 15. (Docket Entry No. 13, Ex. A at 77-78). Onwunumagha expressed incredulity, but offered no explanation for the discrepancies. He did not state that he transposed the gas price numbers, mistakenly reported the prices, or had the prices somehow confused. (*Id.* at 154). Yousaf replaced Onwunumagha with Elizabeth Gutierrez, a Spanish-speaking, Hispanic woman, who previously served as manager at another ExxonMobil station. (Docket Entry No. 13, Ex. B at 58–61). After exhausting his administrative remedies, Onwunumagha filed this suit.

**II.    The Standard Under Rule 56**

The usual summary judgment standard applies to this case. Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. Under Rule 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the nonmovant's case. *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1074 (5th Cir. 1997). If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response. *Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002).

When the moving party has met its Rule 56(c) burden, the nonmovant cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings. *See Prejean v. Foster*, 227 F.3d 504, 508 (5th Cir. 2000). The nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *See id*. The nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Webb v. Cardiothoracic Surgery Assocs.*, 139 F.3d 532, 536 (5th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986).

In deciding a summary judgment motion, the court reviews the facts drawing all reasonable inferences in the light most favorable to the nonmovant. *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002); *Anderson*, 477 U.S. at 255. "Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Celotex*, 477 U.S. at 322).

**III.    Title VII**

    **A.    The Applicable Legal Standard**

Claims of intentional discrimination, including race discrimination and retaliation under Title VII, are considered under the "same rubric of analysis." *Raggs v. Mississippi Power & Light* Co., 278 F.3d 463 (5th Cir. 2001). Under Title VII, it is unlawful for any employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1)(1988). Title VII also forbids an employer from retaliating against an employee because the employee "opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3.

"A plaintiff who can offer sufficient direct evidence of intentional discrimination should prevail, just as in any other civil case where a plaintiff meets his burden." *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 40 (5th Cir. 1996). "However, because direct evidence of discrimination is

rare, the Supreme Court has devised an evidentiary procedure that allocates the burden of production and establishes an orderly presentation of proof in discrimination cases." *Id.*; *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 (5th Cir. 1993). Under Title VII, the plaintiff carries the initial burden of establishing a *prima facie* case of discrimination. *Reeves v. Sanderson Plumbing Co.*, 530 U.S. 133, 142 (2000); *McDonnell Douglas Corp. v. Green,* 411 U.S. 801, 802 (1973); *Hall v. Gillman Inc.*, 81 F.3d 35, 37 (5th Cir. 1996); *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996); *Bodenheimer,* 5 F.3d at 957 n.4. A *prima facie* showing of race discrimination requires a plaintiff to show that he (1) is a member of a protected class; (2) was qualified for his position; (3) was subjected to an adverse employment action; and (4) was replaced by someone outside the protected class or received disparate treatment. *See Raggs,* 278 F.3d at 468; *Ward v. Bechtel Corp.*, 102 F. 3d 199, 202 (5th Cir. 1997).

If a plaintiff makes a *prima facie* showing, the burden shifts to the defendant to articulate a "legitimate, nondiscriminatory reason" for the adverse employment decision. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). If a defendant can produce such evidence, the plaintiff then must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons." *Id*. at 253. At all times, the plaintiff retains the ultimate burden of persuasion. *See Burdine*, 450 U.S. at 253.

In discriminatory discharge cases based on an employee's alleged violation of a "work rule," plaintiffs "may establish a *prima facie* case by showing 'either that [they] did not violate the rule or that, if [they] did, [employees outside the protected class] who engaged in similar acts were not punished similarly.'" *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995) (quoting *Green v. Armstrong Rubber Co.*, 612 F.2d 967, 968 (5th Cir. 1980)); *see also Simmons v. Rothe*

*Dev., Inc.*, 952 F. Supp. 486, 490 (S.D. Tex. 1997), *aff'd*, 132 F.3d 1456 (5th Cir. 1997). To state a *prima facie* case based on disparate discipline, the employee "must show that [noncomplaining] employees were treated differently under circumstances 'nearly identical' to [theirs]." *Mayberry*, 55 F.3d at 1090 (quoting *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991)); *see also Simmons v. Rothe Dev. Co.*, 952 F. Supp. 486, 490 (S.D. Tex. 1997); *Lee v. Georgia-Pacific Corp.*, 944 F. Supp. 497, 501-02 (S.D. Miss. 1996) (both holding that plaintiff could not prove his case of disparate discipline after admitting to violating the work rule and then failing to prove that employees outside the protected class were treated differently).

Alternatively, a plaintiff may proceed on a "mixed-motive" theory of discrimination. *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). The mixed-motive analysis requires only that a plaintiff produce direct evidence that "discriminatory animus played a role in the decision at issue, after which the burden of persuasion shifts to the defendant, who must prove that it would have taken the same action regardless of discriminatory animus." *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002) (internal marks omitted)).

In determining whether the nonmovant has created a genuine issue of material fact, the court looks to rebuttal evidence of pretext "in tandem with evidence presented as part of the *prima facie* case." *Haas v. Advo Sys., Inc.*, 168 F.3d 732, 733 (5th Cir. 1999). A "plaintiff's *prima facie* case, combined with sufficient direct evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S. at 148. The trier of fact may "infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Id.* at 147; *see also Vade v. Mississippi State Univ.*, 218 F.3d 365, 374

n.23 (5th Cir. 2000) (discussing application of *Reeves*). "[Such a showing by the plaintiff will not] always be adequate to sustain a jury's finding of liability. Certainly there will be instances where, although the plaintiff has established a *prima facie* case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder would conclude that the action was discriminatory." *Reeves*, 530 U.S. at 148.

### B. Onwunumagha's Title VII Claim

#### 1. The Summary Judgment Record

Onwunumagha claims that none of the evidence supporting Yousaf's version of the events is admissible summary judgment evidence. Onwunumagha objects to the document on which Yousaf recorded RaceTrac's fuel prices as an unauthenticated document containing inadmissible hearsay. (Docket Entry No. 16 at 9). Yousaf testified that he recorded these numbers as part of his routine practice in verifying the accuracy of fuel prices. (Docket Entry No. 13, Ex. B at 108, 111). The document is an admissible business record. FED. R. EVID. 803(6). Part of the document includes a handwritten note from RaceTrac's manager that Bruinsma gave to Yousaf. Moreover, ExxonMobil can rely on the personal observations of both Yousaf and Bruinsma to support its claim that the RaceTrac's fuel prices were different than the prices reported by Onwunumagha. (Docket Entry No. 13, Ex. B, Depo. Ex. 4; Ex. B at 107–09, 116–17, 119–21). Finally, the document as a whole is admissible as evidence of what Yousaf and ExxonMobil relied on in making the termination decision, not as evidence that the contents of the record were true. Evidence tending to prove that the statement was made, not that it was true, is not hearsay.

Onwunumagha also objects to Yousaf's deposition testimony about RaceTrac's prices as inadmissible hearsay. (Docket Entry No. 16 at 10). Onwunumagha's attorney did not raise an

objection to this testimony during the deposition. *See In re United States*, 864 F.2d 1153, 1156 (5th Cir. 1989) ("[A]s a general rule, when a party fails to object timely to interrogatories, production requests, or other discovery efforts, objections thereto are waived."). Even if Onwunumagha had preserved this objection, however, it would be overruled. Yousaf's testimony on this point was admissible: Yousaf testified about information he personally observed, documents he personally prepared, documents prepared by other employees in the regular course of business, information obtained from Bruinsma that was relevant as part of what Yousaf relied on (rather than for the truth of the information), and contemporaneous notes Yousaf made while viewing the RaceTrac prices. This testimony is admissible under the Federal Rules of Evidence (specifically, Rule 602 (personal knowledge), Rule 803(6) (business record), and the rule that information that is introduced for a reason other than to prove the matter asserted is not hearsay). Onwunumagha's objections to ExxonMobil's summary judgment evidence fail.

### 2. *The* McDonnell-Douglas *Test*

Onwunumagha does not submit direct evidence of discrimination; the burden shifting analysis of *McDonnell-Douglas* applies. Onwunumagha states a *prima facie* case of race discrimination. Onwunumagha, a black man of Nigerian descent, is a member of a protected class; ExxonMobil does not dispute that Onwunumagha held the qualifications for the position of station manager; and ExxonMobil fired Onwunumagha and replaced him with someone outside the

protected class.[1]  *See, e.g.*, *Pratt v. City of Houston*, 247 F.3d 601, 606 n.2 (5th Cir. 2001); *Rutherford v. Harris County, Texas*, 197 F.3d 173, 179 (5th Cir. 1999).

Under *McDonnell-Douglas*, the burden of production shifts to ExxonMobil to demonstrate a legitimate, nondiscriminatory reason for firing Onwunumagha. *Burdine*, 450 U.S. at 254. ExxonMobil meets this burden. ExxonMobil has presented competent summary judgment evidence that it fired Onwunumagha based on information that he violated a posted offense by falsifying documents. (Docket Entry No. 13, Ex. A at 77-78). As Onwunumagha knew in advance, ExxonMobil required station managers to go to designated competitors' stations, record the gas prices, and report those prices to ExxonMobil on a daily basis. (*Id.* at 29–30, 32–35, 49). Although Onwunumagha contends that ExxonMobil's decision to terminate his employment based on falsification of records was "illogical" in light of the fact that the decision was based on only three erroneous reports out of 960 total reports submitted during his tenure at ExxonMobil, (Docket Entry No. 13 at 13), it is undisputed that the decision was consistent with the stated policy. ExxonMobil's posted rules and requirements made it clear that falsification of documents was punished severely, including job termination without warning. (*Id.* at 52–53). Before this incident involving Onwunumagha, ExxonMobil had fired another store manager who violated the same rule. (Docket Entry No. 13, Ex. C, Ex. 7). Submitting false fuel reports is falsification of a company document. ExxonMobil's stated reason for firing Onwunumagha was facially nondiscriminatory. ExxonMobil has met its burden under the second part of the *McDonnell-Douglas* test.

---

[1] ExxonMobil tailors its argument on Onwunumagha's burden to make out a *prima facie* case to a disparate discipline claim. (Docket Entry No. 13 at 8–14). However, Onwunumagha does not allege disparate discipline. (*See* Docket Entry No. 1; Docket Entry No. 16 (further noting that Onwunumagha does not allege disparate discipline)). Rather, he alleges that he did not commit the posted offense of fabricating documents.

To prevent summary judgment in favor of ExxonMobil, Onwunumagha must identify or submit evidence sufficient to create an issue of material fact supporting his contention that ExxonMobil's reason for terminating him was pretextual. *Burdine*, 450 U.S. at 253. Onwunumagha claims that he did not falsify the fuel prices he submitted to ExxonMobil on April 14-15, 2004. (Docket Entry No. 16 at 13). Onwunumagha disputes ExxonMobil's interpretation of "falsification" by arguing that "falsification requires intent and is an intentional act." (*Id.*). However, this is a litigation argument; in his deposition, Onwunumagha conceded that no one from ExxonMobil attached such an interpretation to the rule or explained the rule as requiring intent. (Docket Entry No. 13, Ex. A at 78-83).

Even if Onwunumagha's interpretation of the rule were correct, he cannot make a *prima facie* case of discriminatory discipline under *Mayberry*. Fifth Circuit precedent holds that "a mistaken but good-faith belief that an employee has violated the employer's rules is sufficient to rebut the *McDonnell Douglas* inference that the employee was discharged for impermissible reasons." *Corley v. Jackson Police Dep't*, 639 F.2d 1296, 1298 (5th Cir. 1981) (citing *Corley v. Jackson Police Dep't*, 566 F.2d 994, 1003 n.14 (5th Cir. 1978), *Turner v. Texas Instruments, Inc.*, 555 F.2d 1251, 1256-67 (5th Cir. 1977); *Jeffries v. Harris County Cmty. Action Ass'n*, 615 F.2d 1025, 1036 (5th Cir. 1980)). Under the *Mayberry* test, Onwunumagha must show either that he did not violate the posted rule or that, if he did, similarly situated employees outside the protected class who falsified documents were punished less harshly. *Mayberry*, 55 F.3d at 1090; *see also Simmons v. Rothe Dev., Inc.*, 952 F. Supp. 486, 490 (S.D. Tex. 1997), *aff'd*, 132 F.3d 1456 (5th Cir. 1997) (holding that plaintiff could not prove his case of disparate discipline after admitting to violating the work rule and then failing to prove that employees outside the protected class were treated

differently). As noted, Onwunumagha does not assert disparate discipline. Instead, he argues that he did not violate the rule in the first place. The evidence does not give rise to an issue of disputed fact material to determining whether Yousaf and Skrien (the human resources manager who Onwunumagha had never met)[2] had a reasonable, good faith basis to believe that Onwunumagha had violated the work rule.

The summary judgment record demonstrates that Yousaf personally checked the competitors' fuel prices against the prices Onwunumagha submitted. (*Id.*, Ex. B at 112–13). Additionally, Yousaf asked another manager, Bruinsma, to verify the prices, both in person and in writing, before ExxonMobil fired Onwunumagha. (*Id.* at 120–23, Ex. 4). Onwunumagha responds to this significant evidence of good faith by asserting that Yousaf falsified the documents and lied to his immediate supervisor and the human resources department about the fuel reports. (Docket Entry No. 16 at 13). This uncorroborated and conclusory assertion is insufficient to preclude summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (holding that nonmovant cannot survive summary judgment simply by casting doubt on the movant's statements); *Flourine On Call, Ltd. v. Siegele*, 380 F.3d 849, 866 (5th Cir. 2004) (same); *see also Waggoner v. City of Garland, Texas*, 987 F.2d 1160, 1164 (5th Cir. 1993) ("We have held that a plaintiff's subjective belief that his discharge was based on [a discriminatory purpose] is simply insufficient to establish" an issue of material fact in a civil rights claim). Additionally, ExxonMobil introduced summary judgment evidence that another station manager committing the same rule violation was also fired. (Docket Entry No. 13, Ex. C, Ex. 7). Onwunumagha cannot assert a *prima facie* case of

---

[2] (Docket Entry No. 13, Ex. A at 86).

discriminatory discipline under either Fifth Circuit-sanctioned theory, nor can he rely on these arguments to rebut ExxonMobil's legitimate employment decision under *McDonnell-Douglas*.

Onwunumagha asserts that his termination was pretextual because ExxonMobil wanted to replace him with someone with a Hispanic background to appeal to the customer base in that area. Onwunumagha points to the introduction of a Hispanic food line as evidence that ExxonMobil wanted to push Onwunumagha out in favor of a Hispanic manager. (Docket Entry No. 16 at 14). This argument ignores the evidence that every ExxonMobil store in Houston began selling Hispanic foods at this time as part of a city-wide marketing effort. (Docket Entry No. 13, Ex. A 71–72, Ex. B at 52). Additionally, the demographic and market factors that may have favored hiring Hispanic workers also existed at the time ExxonMobil hired Onwunumagha, who had worked at the store less than a year. The summary judgment evidence does not support an inference that ExxonMobil, knowing that Onwunumagha was neither Hispanic nor spoke Spanish, placed Onwunumagha at this store only to fire him less than a year later in order to hire a Hispanic manager. Because he has failed to create a triable issue of material fact on the issue of pretext, Onwunumagha cannot meet his burden under the third prong of the *McDonnell-Douglas* burden-shifting analysis, as a matter of law.

### 3. The Mixed Motive Theory

Onwunumagha alternatively pleads a mixed-motive theory of discrimination. (Docket Entry No. 16 at 14–15). As the case Onwunumagha cites, *Machinchick*, makes clear, to survive summary judgment on a mixed-motive theory, "a plaintiff relying on circumstantial evidence has two options . . . (1) the plaintiff may offer evidence showing that the defendant's proffered nondiscriminatory reasons are false; or (2) the plaintiff may offer evidence showing that his [protected status] was a

motivating factor for the defendant's adverse employment decision." 398 F.3d at 352. Onwunumagha has not produced summary judgment evidence sufficient to preclude summary judgment using either option.

As discussed above, Onwunumagha's allegations that Yousaf falsified documents to support the termination decision are insufficient to survive summary judgment without any supporting evidence. Onwunumagha has not raised a disputed fact issue as to ExxonMobil's decision to terminate his employment in accordance with company rules and policy.

Additionally, Onwunumagha has not introduced any evidence supporting an inference that his race played a role in ExxonMobil's termination decision. Onwunumagha cites no comments or other evidence of negative, race-based attitudes, remarks, or biases from any of the individuals involved in the termination decision. (*See* Docket Entry No. 13, Ex. A at 56–57 (Onwunumagha describing his relationship with Yousaf as positive); *id.* at 58, 91 (Onwunumagha explaining that he had no knowledge that Meyer, who is also black, had any problems with Onwunumagha based on race); *id.* at 86 (Onwunumagha explaining that he had never met Skrien)). Given the opportunity to discuss unfair treatment by ExxonMobil based on his race, Onwunumagha speculated that Yousaf visited and monitored Onwunumagha's store more than other managers' stores because Yousaf harbored racial bias against Onwunumagha. (Docket Entry No. 13, Ex. A at 61). Onwunumagha offered no proof that this heightened monitoring actually took place and further conceded that his store, which was large, might have required more oversight. (*Id.* at 59–60, 74–75). Additionally, Onwunumagha conceded that because he had been working for ExxonMobil for less than a year, Yousaf may have reasonably wanted to pay more attention to Onwunumagha's store. (*Id.*). For summary judgment purposes, Onwunumagha's inability to present evidence beyond his naked

accusation that Yousaf monitored Onwunumagha more thoroughly than he monitored other store managers is insufficient to create a fact issue. Summary judgment in ExxonMobil's favor is appropriate on Onwunumagha's Title VII claim.

## IV.     The Intentional Infliction of Emotional Distress (IIED)

### A.     The Applicable Legal Standard

A claim for intentional infliction of emotion distress (IIED) under Texas law requires a plaintiff to plead and prove that: (1) the defendant acted intentionally or recklessly; (2) its conduct was extreme and outrageous; (3) its actions caused the plaintiff emotional distress; and (4) plaintiff's emotional distress was severe. *Texas Farm Bureau Mut. Ins. Co. v. Sears*, 84 S.W.3d 604, 610 (Tex. 2002).

In *Sears*, the Texas Supreme Court expanded on the "extreme and outrageous" conduct required to support a plaintiff's claim of intentional infliction of emotional distress:

> To be extreme and outrageous, a defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Conduct that is merely insensitive or rude is not extreme and outrageous. Likewise, "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities do not rise to the level of extreme and outrageous conduct."

84 S.W.3d at 610 (internal citations omitted). In determining whether particular conduct qualifies as "extreme and outrageous," courts consider the behavior's context and the relationship between the parties. *Id.* at 610–11. Within the employment context, courts must allow an employer "some discretion to 'supervise, review, criticize, demote, transfer, and discipline' its workers." *Id.* at 611 (quoting *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 611 (Tex. 1999)).

### B.     Onwunumagha's IIED claim

Texas courts have held that a plaintiff cannot claim IIED if there are other statutory remedies for the challenged employment decision. *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005); *Hoffman-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004). Because Onwunumagha's IIED claim comprises all of the allegations in his Title VII complaint without more (*see* Docket Entry No. 13, Ex. A at 61–62), his IIED claim fails as a matter of law. *Cf. Creditwatch*, 157 S.W.3d at 816 ("[I]ntentional infliction of emotional distress is a 'gap-filler' tort never intended to supplant or duplicate existing statutory or common-law remedies.").

Even assuming that Onwunumagha could state a discrete IIED cause of action, the claim fails as a matter of law because he has identified no summary judgment evidence of any "extreme" or "outrageous" conduct. Liability for IIED may attach "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993) (adopting RESTATEMENT (SECOND) OF TORTS § 46 (1965) and quoting *id.* at cmt. d). Onwunumagha alleged only that ExxonMobil terminated him. He has not alleged or produced any summary judgment evidence indicating legally "outrageous" treatment. *Contra Wal-Mart Stores, Inc. v. Bertrand*, 37 S.W.3d 1, 14 (Tex. App. – Tyler 2000, pet. denied) (supervisor's constant berating of plaintiff, criticizing plaintiff's job performance without providing any specifics, and calling plaintiff "Bozo the Clown" was not extreme or outrageous as a matter of law); *Am. Med. Int'l, Inc. v. Giurintano*, 821 S.W.2d 331, 341–42 (Tex. App. – Houston [14th Dist.] 1991, no writ.) (screaming at plaintiff, making allegedly racist comments, cursing, and threatening plaintiff was not extreme or outrageous as a matter of law). Accusing Onwunumagha of falsifying gas reports cannot form the basis of an IIED claim because it is not extreme or

outrageous under Texas law. *Diamond Shamrock Refining & Marketing Co. v. Mendez*, 844 S.W.2d 198, 202 (Tex. 1992) (holding that an employer's characterization of a former employee as a "thief" in the community was insufficiently "outrageous" to raise a fact issue).

Finally, even if Onwunumagha could make an independent claim of IIED and could further meet the *prima facie* requirement that ExxonMobil's conduct was extreme and outrageous, he fails to introduce competent summary judgment to create a triable issue of fact that he suffered the requisite "severe" emotional distress. "Emotional distress includes all highly unpleasant mental reactions such as embarrassment, fright, horror, grief, shame, humiliation, and worry. Severe emotional distress is distress that is so severe that no reasonable person could be expected to endure it." *Bailey v. Gulf States Utilities Co.*, 27 S.W.3d 713, 717 (Tex.App. – Beaumont 2000) (quoting *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 618 (Tex. 1999). Onwunumagha testified in his deposition that he was embarrassed, depressed, and unable to sleep. (Docket Entry No. 13, Ex. A. at 61–62). These ailments are insufficient to create an issue of triable fact as to whether Onwunumagha suffered "severe" emotional distress. Summary judgment in favor of ExxonMobil is appropriate on Onwunumagha's IIED claim.

## VI.     Conclusion

Exxon Mobil's motion for summary judgment is granted. Final judgment is entered by separate order.

SIGNED on September 13, 2005, at Houston, Texas.

                                                Lee H. Rosenthal
                                           United States District Judge